IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

```
                                *
VERNNON N. RICHARDSON,
                                *
     Plaintiff,
                                *      CIVIL NO.: WDQ-06-0938
v.
                                *
LUCENT TECHNOLOGIES, ET AL.,
                                *
     Defendants.
                                *
```

*    *    *    *    *    *    *    *    *    *    *    *    *

MEMORANDUM OPINION

Vernnon N. Richardson has sued AT&T Inc., ("AT&T"), Lucent Technologies, ("Lucent"), and his supervisor, Jon Capps, for 1) disparate treatment/race discrimination; 2) wrongful discharge; 3) intrusion upon seclusion; 4) false light; 5) tortious interference with economic interest; 6) intentional infliction of emotional distress; 7) negligent hiring; 8) defamation; 9) violations of Maryland fair employment practices and anti-discrimination laws; and 10) federal labor law violations related to his discharge from employment.

Pending are motions to dismiss, filed by AT&T (the "AT&T Motion") and Lucent and Capps (the "Lucent Motion").  For the reasons discussed below, AT&T will be granted summary judgment and the Lucent motion to dismiss will be granted.

I.   Background

Richardson, an African-American male, began working for AT&T on August 11, 1986.  Second Am. Compl. ¶ 2.  Richardson alleges that AT&T named his division "Lucent Technologies" in February 1996, but remained Lucent's parent company.  *Id*. ¶ 4.  He further alleges that he had been recognized by AT&T/Lucent and given awards for his work.  *Id*. ¶ 3.  Richardson alleges that despite his qualifications and successful performance, he was terminated for telephone misuse after more than 18 years with AT&T.  *Id*. ¶ 11.

According to Richardson, Capps traced phone calls received on Richardson's company phone and determined that Richardson had been receiving and making calls for his private business venture while at work.  *Id*. ¶¶ 18, 20, 26.  Capps presented his findings and caused Richardson to be fired on December 2, 2004.  *Id*. ¶ 26, 28.

Richardson also alleges that he was offered "an early and optional buyout, known as the Enhanced Optional Termination Payment Offer."[1]  *Id*. ¶ 57.  Richardson refused the offer because he wanted full retirement benefits after 20 years of employment.  *Id*.

During his employment, Richardson was a member of the

_____

[1] Paragraph 57 of the Second Am. Compl. states that the offer occurred after termination, but in paragraph 58, Richardson alleges that he was terminated *after* refusing the offer.

Communication Workers of America Union (the "Union") and his employment was governed by various collective bargaining agreements.  Mem. Opp. AT&T Mot. ("Opp. to AT&T Mot.") Unmarked Ex. (Affidavit of Richardson ¶ 26); Mem. Supp. AT&T Mot. at 6 (the "AT&T Mem.").   These agreements contain grievance and arbitration procedures for discharge.  AT&T Mem. at 6.  On December 9, 2004, the Union filed a grievance on Richardson's behalf, and on March 14, 2006, the Union advised Lucent of its intent to proceed to arbitration.  *Id.*

On November 23, 2005, Richardson filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission (the "EEOC") against Lucent alleging racial discrimination in violation of Title VII of the Civil Rights Act of 1964.  AT&T Mem. Ex. A (Richardson's Charge of Discrimination).  On December 14, 2005, Richardson's charge was dismissed as untimely.  AT&T Mem. Ex. B (Richardson's Dismissal and Notice of Rights).

On March 13, 2006, Richardson filed his complaint and, apparently, an Amended Complaint in the Circuit Court of Howard County, Maryland.  Notice of Removal ¶ 1 (Paper No. 1); AT&T Mem. at 2.  On April 12, 2006, the Defendants removed the case to this Court.  On September 8, 2006 the Court granted Richardson's motion for a Second Amended Complaint.

II.  Analysis

A.   The AT&T Motion

     AT&T has moved to dismiss, arguing that: 1) it is not a
proper party because at all relevant times it was not
Richardson's employer; and 2) each of the ten counts is either
preempted or fails to state a claim.   Richardson asserts that
AT&T was his employer, but offers no argument on preemption.

1.   The AT&T Motion

     The AT&T Motion was filed under Federal Rule of Civil
Procedure 12(b)(6) (failure to state a claim upon which relief
can be granted).   Rule 12(b) provides that if, "matters outside
the pleading are presented to and not excluded by the court, the
[12(b)(6)] motion shall be treated as one for summary judgment
and disposed of as provided in Rule 56."   However, the Court must
be mindful that "all parties . . . be given reasonable
opportunity to present all material made pertinent to such a
motion by Rule 56."

     Conversion will not deprive a party of the opportunity for
discovery appropriate under Rule 56 when that party has adequate
notice that the motion could be converted.   *See Laughlin v.
Metro. Washington Airports Auth.*, 149 F.3d 253, 260-61 (4th Cir.
1998) (including affidavits with a 12(b)(6) motion may provide
adequate notice that the Court may consider the motion as one for

summary judgment).  *Id.* at 260-61.

Here, AT&T's motion to dismiss, although not captioned as one for summary judgment in the alternative, contained a footnote stating "if the Court considers the extrinsic evidence supplied by the Declaration of Eric S. Rosen, it must treat AT&T's Rule 12(b)(6) motion as a motion for summary judgment under Rule 56, and respectfully requests that the Court do so."  AT&T Mem. at 10 n.5.  AT&T included a declaration under penalty of perjury. AT&T's Mem. Ex. C (Declaration of Eric S. Rosen, Corporate Counsel for Lucent).  Moreover, Richardson attached supporting affidavits and other materials to his opposition to the AT&T Motion.  Richardson Aff.; Opp. to AT&T Mot. Ex. I (website printout from http://www.lucent.com discussing the relationship of AT&T and Lucent) (the "Lucent.com Website").[2]  Thus, Richardson had actual notice that summary judgment was among the relief sought by AT&T.

2.   Standard of Review

Under Rule 56(c), summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A dispute about a material

---

[2] The website no longer exists as Lucent has since merged with Alcatel.  The merged company's new website can be found at: http://www.alcatel-lucent.com/wps/portal.

fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The court must view the facts and reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The opposing party, however, must produce evidence upon which a reasonable fact finder could rely.  *Celotex*, 477 U.S. at 317.  The mere existence of a "scintilla" of evidence is insufficient to preclude summary judgment.  *Anderson*, 477 U.S. at 252.

3.   AT&T's relationship with Lucent and Richardson

AT&T argues that 1) it did not employ Richardson during the times at issue and thus cannot be liable for any of the alleged actions of Capps and Lucent; and 2) it was an independent company distinct from Lucent.  Richardson replies that AT&T simply changed its name to Lucent, and he always believed that he was employed by AT&T.

AT&T offers evidence from Rosen, Lucent's Corporate Counsel, who has sworn that Richardson was not an employee of AT&T during the time period relevant to this suit.  Rosen Decl. ¶ 3. According to Rosen, Richardson worked at AT&T from August 11, 1986 until 1996.  *Id*. ¶ 4.  Richardson alleges, and AT&T concedes, that there was a name change in February 1996; however,

6

the name change was but one step in a total divestment process that culminated when Lucent and AT&T became separate, independent companies on September 30, 1996.  At that time, Richardson became an employee of Lucent.  *Id*. ¶ 4, 7.  After the divestiture and until Richardson's termination on December 2, 2004, he was not an employee of AT&T.  *Id*. ¶ 8.

In opposition, Richardson simply asserts that he worked for AT&T from 1986 to 1996 and for AT&T and Lucent Technologies from 1997 to 2004.  Richardson Aff. ¶ 12.  Richardson states that he was aware of the name change in February 1996 but believed that Lucent's parent was AT&T.  In support, Richardson offers a printout from the old Lucent.com Website stating that AT&T divided itself, and Lucent became a separate company in 1996. Opp. to AT&T Mot. Ex. I at 3, 4.  Richardson offers no evidence that AT&T remained the parent of Lucent or continued to employ him.

Every count in the Second Amended Complaint, except Count VII -- Negligent Hiring of Capps, relates to events occurring after September 30, 1996.  Accordingly, judgment will be entered in favor of AT&T on the grounds that AT&T was not Richardson's employer at the time relevant to the allegations on all counts except Count VII.  Although it is not clear, however, whether AT&T or Lucent hired Capps, Richardson has failed to state a claim for negligent hiring, and that claim will be dismissed.

B.   The Lucent Motion

Lucent argues generally that each of the ten counts in Richardson's complaint is either preempted or fails to state a claim upon which relief can be granted.  The Plaintiff's response lacks supporting argument and citations to cases, statutes, constitutional provisions or other authorities.

The response to Lucent's arguments that Richardson fails to state claims in Counts IV - X consists solely of the assertion that "[a]lso, on the grounds, the Plaintiff has met his burden of alleging facts sufficient for a trier of fact (i.e., jury) to make a decision.  Therefore, the Plaintiff's complaint states grounds upon which relief may be granted."  This argument is not persuasive.  The Court will nonetheless assess the allegations of each claim.

1.   Standard of Review

Under Rule 12(b)(6), a motion to dismiss should be granted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)), *Mylan Laboratories, Inc. v. Raj Matkari, et al.*, 7 F.3d 1130, 1134 (4th Cir. 1993).  All allegations are treated as true, and the complaint is viewed in the light most favorable to the plaintiff.  *Mylan*, 7 F.3d at 1134.

8

In deciding a Rule 12(b)(6) motion, the Court will consider the facts stated in the complaint and any attached documents. *Biospherics, Inc., v. Forbes, Inc.*, 989 F.Supp. 748, 749 (D. Md. 1997) *aff'd* 151 F.3d 180 (4th Cir. 1998).   The Court may also consider documents referred to in the complaint and relied upon by the plaintiff in bringing the action.   *Id.*

The court, however, "is not bound to accept as true a legal conclusion couched as a factual allegation. . . . Nor is the Court bound to accept Plaintiff's conclusory allegations regarding the legal effect of the facts alleged." *Nat'l Cas. Co. v. Lockheed Martin Corp.*, 415 F.Supp.2d 596, 600-01 (citations omitted).   "[A] 'claim' cannot be stated in the form of a legal conclusion, without more." *Sheridan-Wyoming Coal Co. v. Krug*, 168 F.2d 557, 559 (C.A.D.C. 1948).   Indeed, "[a] complaint must contain more than the bare assertion of legal conclusions, and it must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Hughes v. Sanders*, 469 F.3d 475, 477 (6th Cir. 2006); *accord Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003).

2.   Count I -- Disparate Treatment/Race Discrimination

Lucent argues that Richardson's claim for disparate treatment/race discrimination fails under Title VII.

There are two timing requirements relevant to a Title VII

9

action: 1) "filing timely charges of employment discrimination with the EEOC;" and 2) "receiving and acting upon the EEOC's notice of the right to sue." *Van Slyke v. Northrop Grumman Corp.*, 115 F.Supp.2d 587, 592 (D. Md. 2000); *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 384, 393 (1982)("filing a timely charge is not a jurisdictional prerequisite and is instead a requirement like a statute of limitations").  "In Maryland, a charging party must file an EEOC charge within 300 days of the alleged unlawful employment practice." *Van Slyke,* 115 F.Supp.2d at 592 (*citing* 42 U.S.C. § 2000e-5(e)(1)).[3]  If a plaintiff "fails to comply with this statutorily mandated filing period, alleged discriminatory acts which occurred more than 300 days prior to the filing of the EEOC charge may not be subsequently challenged in a Title VII suit."  *Id.* (*citing Beall v. Abbott Laboratories*, 130 F.3d 614, 620-21 (4th Cir. 1997)).

On December 2, 2004, the alleged unlawful employment practice occurred when Lucent terminated Richardson.  On November 23, 2005, 356 days later, Richardson filed his charge of discrimination.  On December 14, 2005, the EEOC dismissed Richardson's charge for failure to timely file.  Lucent Mem. Ex. B (Richardson's Dismissal and Notice of Rights).  Richardson

---

[3] The statute, however, establishes a 180 day limitation period in ordinary circumstances and a 300 day limitations period if a charge is filed with a local or state agency with authority to grant or seek relief from such practice.  Richardson did not file within the longer period.

argues that he complied with the "right to sue" requirement and,
although not denying his failure to comply with the "timely
filing of charges" requirement, argues that he should not be
time-barred because he relied on the Union's grievance process.[4]

Filing a timely charge of discrimination with the EEOC is
subject to waiver and estoppel.  *Soble v. University of Maryland*,
572 F. Supp. 1509, 1515 (D. Md. 1983).  Richardson has not
alleged that Lucent waived its right to assert timeliness.

The doctrine of equitable tolling may save a claim that
violated the 300-day timely filing requirement.  *Walton v.
Guidant Sales Corp.*, 417 F.Supp.2d 719, 721 (D. Md. 2006).  It
has been applied when: 1) "the plaintiffs were prevented from
asserting their claims by some kind of wrongful conduct on the
part of the defendant"; or 2) "extraordinary circumstances beyond
plaintiffs' control made it impossible to file the claims on
time."  *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000).
Equitable tolling, however, is "guarded and infrequent, lest
circumstances of individualized hardship supplant the rules of
clearly drafted statutes."  *Id.*  Its application must "be
reserved for those rare instances where--due to circumstances
external to the party's own conduct--it would be unconscionable
to enforce the limitation period against the party and gross

---

[4] To the extent that Richardson believes that the Union did
not perform its duties, hey may seek appropriate redress from the
Union.

injustice would result." *Id*.  Richardson has not alleged that
Lucent contributed in any way to the delay.

Moreover, Richardson has not established an extraordinary
circumstance beyond his control that prevented him from following
the statute's timing requirements.  Notably, "a mistake by a
party's counsel in interpreting a statute of limitations does not
present the extraordinary circumstance beyond the party's control
where equity should step in to give the party the benefit of his
erroneous understanding." *Harris*, 209 F.3d at 331.

Here, Richardson argues that he relied on the Union's
process and only after he felt that the process was taking too
long did he seek to pursue his claim with the EEOC.  Response to
Lucent at 7.  As reliance on counsel would not have been an
extraordinary circumstance, the Court finds that Richardson's
reliance on the Union and the Union's alleged failures are not
extraordinary circumstances warranting equitable tolling.
Accordingly, Richardson's claim for disparate treatment will be
dismissed.

3.   Count II -- Wrongful Discharge

Maryland law requires a plaintiff claiming wrongful
discharge to allege: (1) he was discharged; (2) his discharge
violated a clear mandate of public policy; and, (3) a nexus
between the employee's conduct and the employer's decision to
fire the employee. *King v. Marriott Inter. Inc.*, 160 Md. App.

689, 700 (2005).  Absent that contravening public policy, "a
jury may not review any aspect of the employer's decision to
terminate and . . . the employer may . . . terminate an employer
[sic] for any reason, even a reason that is arbitrary,
capricious, or fundamentally unfair." *Towson Univ. v. Conte*, 384
Md. 68, 82 (2004).

"Ordinarily . . . the public policy must be reasonably
discernible from statutory or constitutional mandates." *King*,
160 Md. App. at 701.  Indeed, a violation of a clear mandate of
public policy has only been found in the following circumstances:
1) "where an employee has been fired for refusing to violate the
law or the legal rights of a third party"; and 2) "where an
employee has been terminated for exercising a specific legal
right or duty." *Id.* (citations omitted).

A cause of action for abusive discharge is "inherently
limited to remedying only those discharges in violation of a
clear mandate of public policy *which otherwise would not be
vindicated by a civil remedy.*" *Makovi v. Sherwin-Williams Co.*,
316 Md. 603, 605 (1989) (emphasis added).  To the extent
Richardson's wrongful discharge claim relies on discrimination
under either Title VII or Md. Ann. Code art. 49B, § 16(a)(1)
(2001)[5], it fails because those statutes have civil remedies to

_____

[5] The Maryland Fair Employment Practices Law is the state
counterpart to Title VII; like its federal counterpart, the
Maryland statute declared discriminatory employment practices to

vindicate violations of their underlying public policies.  *Id*. at 609; *Parlato v. Abbott Lab.*, 850 F.2d 203, 206 (4th Cir. 1988).[6]

Treating the allegations as true and viewing the Second Amended Complaint in the light most favorable to Richardson, it appears, for purposes of his wrongful discharge claim, that he was discharged because he sought other employment outside of his normal work schedule and received calls about that secondary employment.  Second Am. Compl. ¶¶ 14, 16, 18.  To be clear, he alleges that he was exercising his fundamental right and liberty under the United States Constitution to seek out other employment outside of the his normal work schedule.  *Id*. ¶ 16.[7]

Richardson, however, must "plead with particularity the source of the public policy allegedly violated by [his] termination."  *King*, 160 Md. App. at 703 (citations omitted); *accord Tery v. Legato Systems, Inc.*, 241 F.Supp.2d 566, 569-70 (D. Md. 2003).  Richardson has not cited a section of the

---

be unlawful.  *Makovi*, 316 Md. at 607.

[6] A wrongful discharge claim predicated on the relationship between his discharge and his retirement benefits would likewise fail as the Employee Retirement Income Security Act of 1974 ("ERISA") establishes procedures to protect such rights.  *See* May 30, 2006 Memorandum Op'n at 2-3 (Paper No. 17).

[7] The relationship between the alleged fundamental right and his firing is indirect; he alleges that Lucent discharged him because he received calls for his second job while at work for Lucent, not merely because he had a second job.  However, the inability to receive calls for his second job may have restricted his alleged fundamental right.

Constitution nor has he cited any case discussing such a
fundamental right.  Therefore, Richardson has failed to plead a
cause of action for wrongful discharge.  *See e.g., King*, 160 Md.
App. at 704 (plaintiff failed to meet the threshold requirement
when plaintiff failed to cite to any case, statute, or regulation
and simply asserted that a clear mandate of public policy
existed).  Accordingly, his claim for wrongful discharge will be
dismissed.

4.   Count III -- Intrusion Upon Seclusion

     Intrusion upon the seclusion of another has been defined as
"[t]he intentional intrusion upon the solitude or seclusion of
another or his private affairs or concerns that would be highly
offensive to a reasonable person." *Mitchell v. Balt. Sun Co.*,
164 Md. App. 497, 522 (2005)(citations omitted); *accord*
Restatement of Torts 2d, § 652B.  To be clear, "[i]ntent is
clearly required; 'the tort cannot be committed by unintended
conduct amounting merely to a lack of due care.'" *Id.* (*quoting
Bailer v. Erie Ins. Exchange*, 344 Md. 515, 527 (1997).

     To determine whether an act constitutes an intrusion under
Maryland law, the Court analyzes "whether there has been an
intrusion into a private place or the invasion of a private
seclusion that the plaintiff has thrown about his person or
affairs.  There is no liability for observing him in public
places since he is not then in seclusion." *Furman v. Sheppard*,

130 Md. App. 67, 73 (2000).  In particular, "[i]f surveillance is conducted in a reasonable and non-obtrusive manner, it is not actionable." *Id*. (citations omitted).  In assessing the interest in seclusion, the *Furman* Court engaged in an analysis of the plaintiff's reasonable expectation of privacy.

Richardson alleged that Capps traced the phone calls that came into the company phone and investigated those numbers. Second Am. Compl. ¶ 20.  Richardson has not alleged intrusion into a private place.  Moreover, Richardson does not have a reasonable expectation of privacy with respect to the phone numbers of incoming and outgoing phone calls made during work using the company's cell phone.

Richardson also alleged that Capps "canvassed some areas and inquired . . . into [Richardson's] affairs [by] asking questions of passers-by and tenants of certain locations to determine if [Richardson] worked at places [sic] and/or frequent [sic] certain areas."  This alleged investigation by Capps involved nothing more than asking questions of others in public places.  As Richardson cannot have a reasonable expectation of privacy with respect to information that others have regarding his affairs, there can be no liability for questioning those people.

In addition, Richardson has merely alleged that the conduct was highly offensive and objectionable.  Second Am. Compl. ¶ 23. The Court is not bound to accept such legal conclusions.  As

16

Capps's conduct did not violate any reasonable expectation of privacy, Richardson has not alleged highly offensive conduct.

As Richardson has alleged neither violations of his reasonable expectation of privacy nor highly offensive conduct, the claim for intrusion on seclusion will be dismissed.

5.   Count IV -- False Light

False light is another form of invasion of privacy.  In Maryland "[o]ne who gives publicity to a matter concerning another that places the other before the public in a false light" is liable if: 1) "the false light in which the other person was placed would be highly offensive to a reasonable person"; and 2) "the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed."  *Bagwell v. Peninsula Reg'l Med. Ctr.*, 106 Md. App. 470, 513-14 (1995) (*citing* Restatement (2d) Torts § 652E).  It is clear that a defendant to a false light claim is entitled to judgment as a matter of law when the statement is true.  *Id.* at 514.

Richardson alleges that Capps used the facts gathered during his investigation "to place [Richardson] in a false light by making it seem as if [he] was placing [his own] interest before [Lucent's] legitimate business interest by operating [his] own business during the normal work hours."  Second Am. Compl. ¶ 27. In his allegations, Richardson admits to having his own business

17

and making and receiving calls on its behalf during work.  *Id.* ¶
18, 26.  Even though Capps's alleged conclusion that Richardson
*ran* his personal business while at work may be false, the Court
finds that the underlying information published by Capps to
Lucent was true.  Accordingly, Richardson has failed to state a
claim for false light.

Assuming, *arguendo*, that Capps's information was false,
Richardson still fails to state a claim for false light.
Richardson cannot rely solely on his conclusory allegation that
Capps gathered information with a reckless disregard for the
falsity of such information.  *Id.* ¶ 28.  In fact, it appears,
based on Richardson's allegations, that Capps's alleged
investigation was reasonable and included researching company
phone records over a period of four months and questioning other
persons about those calls.  Accordingly, Richardson's claim of
false light will be dismissed.

6.   Count V -- Tortious Interference with Economic Interest

Lucent argues that Richardson's tortious interference with
economic interest claim is actually a tortious interference with
contract claim.  Lucent Mem. at 18.  Maryland distinguishes
between the two; interference with contract requires proof of a
valid existing contract that was interfered with while
interference with economic relations involves prospective
business relations or contracts terminable at will.  *Kramer v.*

18

*Mayor and City Council of Balt.*, 124 Md. App. 616, 637 (1999). The right to interfere is narrowly restricted in an interference with contract action and more broadly treated in an action involving interference with economic relations. *Id.*

Richardson was terminable at will. Second Am. Compl. ¶ 30. As a result, Richardson alleges tortious interference with economic relations, not interference with contract. To prove intentional interference with economic relations Richardson must show:

> (1) intentional and willful acts; (2) calculated to cause damage to the plaintiff[] in [his] lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting.

*Kramer*, 124 Md. App. at 637-38. (*citing Natural Design, Inc. v. Rouse Co.*, 302 Md. 47, 71 (1984)).

Richardson's claim fails because "the defendant tortfeasor cannot be a party to the contractual or economic relations with which he has allegedly interfered." *Electronics Store, Inc. v. Cellco Partnership*, 127 Md. App. 385, 405-06 (1999). Lucent, his employer, and Capps, its agent, are parties to the employment relationship; therefore, Richardson has failed to state a claim for tortious interference with economic relations with respect to his employment with Lucent.

Furthermore, Richardson does not allege that Capps's efforts affected Richardson's private business; as a result, he has

failed to state a claim for tortious interference with contract or economic relations with respect to that business. Accordingly, Count V will be dismissed.

7.   Count VI -- Intentional Infliction of Emotional Distress

To prevail on a claim for intentional infliction of emotional distress, Richardson must prove that: "(1) [t]he conduct [was] intentional or reckless; (2) [t]he conduct [was] extreme and outrageous; (3) [t]here [is] a causal connection between the wrongful conduct and the emotional distress; (4) [t]he emotional distress [is] severe." *Mitchell v. Baltimore Sun Co.*, 164 Md. App. 497, 525 (2005)(*citing Manikhi v. Mass Transit Admin.*, 360 Md. 333, 367 (2000)).

To be extreme and outrageous, the conduct "must be so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Id.* (citations omitted).  "Moreover, the emotional distress complained of must be so severe that no reasonable man could be expected to endure it." *Id.* (*citing Harris v. Jones*, 281 Md. 560, 571 (1977).  Indeed, "[o]ne must be unable to function; one must be unable to tend to necessary matters." *Id.* (citations omitted).

Richardson alleges that Capps's conduct was "extreme and outrageous and beyond the bounds tolerated by the decency in society."  Second Am. Compl. ¶ 36.  Richardson cannot rely on

this legal conclusion couched as a factual allegation.  Capps's
alleged acts, including investigating Lucent's phone records and
speaking to third persons, "do not go beyond all possible bounds
of decency," are not atrocious, and are not "utterly intolerable
in a civilized society."  *See Borchers v. Hyrchuk*, 126 Md. App.
10, 15-20 (1999) (allegations against pastor who tried to seduce
a vulnerable woman seeking counseling for marital difficulties
did not constitute intentional infliction of emotional distress);
*Beye v. Bureau of Nat'l Affairs*, 59 Md. App. 642, 656-58 (1984)
(allegations of poor performance ratings, threats of termination,
harassment, physical assault, being passed over for promotion,
and being *deceived into resigning* did not state a claim of
intentional infliction of emotional distress).

Assuming, *arguendo*, that Richardson's emotional distress is
sufficient,[8] he has not alleged extreme and outrageous conduct;
accordingly, Richardson's claim of intentional infliction of
emotional distress will be dismissed.

8.   Count VII -- Negligent Hiring

To prove negligent hiring, Richardson must prove that: 1)

---

[8] Richardson alleges that he has suffered emotional distress
affecting his: 1) social and emotional relationship with his
wife; 2) physical health; 3) sleep; and 4) ability to make
decisions.  Second Am. Compl. ¶ 37.  He also alleges that he has:
1) lower levels of energy; 2) depression; 3) sexual dysfunction;
4) posttraumatic stress disorder; 5) eroding of coping skills;
and 6) lack of trust in others.  *Id*.

"[his] injury was caused by the tortious conduct of a coworker";
2) "the employer knew or should have known by the exercise of
diligence and reasonable care that the coworker was capable of
inflicting harm of some type"; 3) "the employer failed to use
proper care in selecting, supervising or retaining that
employee"; and 4) "the employer's breach of its duty was the
proximate cause of the Plaintiff's injuries." *Bryant v. Better
Bus. Bureau of Greater Md., Inc.*, 923 F.Supp. 720, 751 (D. Md.
1996) (*citing Evans v. Morsell*, 284 Md. 160, 165 (1978)).
Moreover, "there is a rebuttable presumption that an employer
uses due care in hiring an employee." *Id.* at 751.

Although Richardson's alleges that: 1) "Defendants knew or
should have known by the exercise of diligence and reasonable
care that [Capps] was capable of inflicting harm of some type to
the Plaintiff"; and 2) "Defendant failed to use proper care in
selecting, supervising, or retaining and promoting [] Capps,"
Second Am. Compl. ¶¶ 42, 43, he lacks specific allegations of
fact to support these conclusions.  In particular, Richardson
fails to allege any facts that, if proven, could establish that
the defendants knew or should have known that Capps was a danger
to Richardson.  As the Court is not bound to accept Richardson's
legal conclusions, the Second Amended Complaint insufficiently
alleges negligent hiring.  Accordingly, Count VII, Negligent
Hiring, will be dismissed.

9.   Count VIII -- Defamation

To succeed in a defamation suit a plaintiff who is not a public figure must prove:

> (1) that the defendant made a defamatory communication-i.e., that he communicated a statement tending to expose the plaintiff to public scorn, hatred, contempt, or ridicule to a third person who reasonably recognized the statement as being defamatory; (2) that the statement was false; (3) that the defendant was at fault in communicating the statement; and (4) that the plaintiff suffered harm.

*Carter*, 153 Md. App. at 237-38 (citations omitted).  "'A defamatory statement . . . discourag[es] others in the community from having a good opinion of, or from associating or dealing with, that person.'"  *Id*. at 238 (*quoting Batson v. Shiflett*, 325 Md. 684, 722-23 (1992)).

Richardson simply states the elements of the cause of action.  For the reasons discussed above, with respect to the false light claim, Richardson has failed to allege that the statements were false.  Accordingly, the claim will be dismissed.

10.   Count IX -- Violations of Maryland Fair Employment Practices and Anti-Discrimination Laws

Richardson alleges that the employment discrimination violates Md. Ann. Code art. 49B, § 42.  Section 42 merely authorizes a person, in, *inter alia*, Howard County, subjected to an act of discrimination prohibited by the county code to bring a civil action against the person who committed the discriminatory act.  *Id*. § 42(a).  Richardson has not cited a section of the

Howard County Code violated by Lucent or Capps.  Accordingly, Richardson has failed to state a claim under Art. 49B, § 42.

11.  Count X -- Federal Labor Law Violations

Richardson alleges that Lucent's "employment practices violate[] the Federal Labor Law standards as such practices in the aggregate substantially affects [sic] commerce."  Second Am. Compl. ¶ 54.  He further alleges that he was unlawfully terminated so that Lucent could avoid a payout of retirement benefits to him.  *Id*. ¶ 56.  The complaint does not state which statute(s) Lucent allegedly violated.  Accordingly, Richardson has failed to state a claim for violation of federal labor law.

III. Conclusion

For the reasons stated above, AT&T will be granted summary judgment.  In addition, the Lucent Motion will be granted because Richardson has failed to comply with timely filing requirements and to state a claim with respect to each count in his complaint.


<u>February 9, 2007</u>                    _____/s/_____
Date                                William D. Quarles, Jr.
                                    United States District Judge


24